UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
at LEXINGTON

CIVIL ACTION NO. 5:09-CV-342-KKC

NANCY DICKSON                                                              PLAINTIFF

v.                              **OPINION AND ORDER**

MICHAEL J. ASTRUE,
*Commissioner of Social Security*                                    DEFENDANT

\* \* \* \* \* \* \* \* \* \* \*

This matter is before the Court on cross motions for summary judgment filed by Plaintiff Nancy Dickson ("Dickson") and Defendant Michael J. Astrue, Commissioner of Social Security ("the Commissioner"). Rec. 7, 8. For the reasons set forth below, the Court will grant the Commissioner's motion for summary judgment.

**I.     FACTUAL AND PROCEDURAL BACKGROUND**

Dickson filed an application for a period of disability and disability insurance benefits ("DIB"), alleging a disability onset date of August 11, 2005. AR 69, 112. Dickson was forty-seven years old at the time of her alleged onset date, had a high school education and past relevant work experience as an inspector and file clerk. AR 76-77.

Dickson's claim was denied initially and on reconsideration. AR 86-92, 95-97. Dickson then requested a hearing before an Administrative Law Judge ("ALJ"), which was held on April 12, 2007. AR 332-75. Daryl Martin, a vocational expert ("VE") also appeared at the hearing and testified. On May 14, 2007, the ALJ issued an unfavorable decision denying Dickson's claim for benefits. AR 66-78.

Dickson then filed an appeal with the Social Security Administration's Appeals Council,

which denied the request for review on May 22, 2009. AR 6-7. As a result, the ALJ's hearing decision became the final decision of the Commissioner. Because Dickson timely exhausted all available administrative remedies, the Commissioner's decision is now fit for review by this Court pursuant to 42 U.S.C. § 405(g).

## II. DISCUSSION

### A. Standard of Review

When reviewing decisions of the Social Security Agency, the Court is commanded to uphold the Agency decision, "absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (internal quotation marks and citation omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 285-86 (6th Cir. 1994).

This Court is required to defer to the Agency's decision "even if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). A district court may not review the case *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *Nelson v. Comm'r of Soc. Sec.*, 195 Fed. App'x 462, 468 (6th Cir. 2006); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Where the Commissioner adopts the ALJ's opinion as his own, the Court reviews the ALJ's opinion directly. *See Sharp v.*

*Barnhart*, 152 Fed. App'x 503, 506 (6th Cir. 2005).

**B. Overview of the Process**

Under the Social Security Act, disability is defined as "the inability to engage in 'substantial gainful activity' because of a medically determinable physical or mental impairment of at least one year's expected duration." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007). The disability determination is made by an ALJ using a five step sequential evaluation process. *See* 20 C.F.R. § 416.920. The claimant has the burden of proving the existence and severity of limitations caused by her impairment and that she is precluded from doing past relevant work for the first four steps of the process. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). However, the burden shifts to the Commissioner for the fifth step. *Id.*

At the first step, the claimant must show she is not currently engaging in substantial gainful activity. *See* 20 C.F.R. § 416.920(a)(4)(I); 20 C.F.R. § 404.1520(b). At the second step, the claimant must show that she suffers from a severe impairment or a combination of impairments that is severe. *See* 20 C.F.R. § 404.1520(c). At the third step, a claimant must establish that her impairment or combination of impairments meets or medically equals a listed impairment. *See* 20 C.F.R. § 404.1520(d); 20 C.F.R. § 404.1525; 20 C.F.R. § 404.1526.

Before considering the fourth step, the ALJ must determine the claimant's residual functional capacity ("RFC"). *See* 20 C.F.R. § 404.1520(e). The RFC analyzes an individual's ability to do physical and mental work activities on a sustained basis despite any existing mental or physical impairments. In determining the RFC, the ALJ must consider all of the claimants impairments, including those which are not severe. *See* 20 C.F.R. § 404.1520(e); 20 C.F.R. §

404.1545. Once the ALJ has determined the claimants RFC the inquiry proceeds to step four. At step four, the ALJ must determine whether the claimant can perform the requirements of her past relevant work. *See* 20 C.F.R. § 404.1520(f).

At the fifth step, the burden shifts to the Commissioner to establish that there is sufficient work in the national economy that the claimant can perform given her RFC, age, education and work experience. *See* 20 C.F.R. § 404.1520(g); 20 C.F.R. § 404.1512(g); 20 C.F.R. § 404.1560(c).

**C. The ALJ's Decision**

At step one, the ALJ found that Dickson has not engaged in substantial gainful activity since August 11, 2005, the alleged disability onset date. At step two, the ALJ found that Dickson suffered from the following severe impairments: degenerative disc disease lumbar spine status post fusion at L4-S and L5-S1; status post left rotator cuff repair; fibromyalgia; and obesity. However, at step three, the ALJ found that these impairments whether considered individually or in combination did not meet or medically equal a listed impairment found in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 72.

Prior to step four, the ALJ determined that Dickson had the RFC to:

> perform light exertional work. She may occasionally lift/carry 20 pounds, frequently lift/carry 10 pounds; stand/walk 6 hours in an 8-hour workday; sit 6 hours in an 8-hour workday; no more than frequently push/pull with the left upper extremity; only occasional climbing stairs/ramps, and never ladders/ropes/scaffolds; only occasional stooping, kneeling or crouching; never crawling; no more than frequent reaching overhead with left non-dominant upper extremity. The claimant is right hand dominant, and she should avoid concentrated exposure to full body vibration. Because of her body habitus she should avoid hazards such as unprotected heights and dangerous machinery.

AR 74. In addition, the ALJ found that while Dickson's medically determinable impairments

could reasonably be expected to produce her alleged symptoms, her statements about the intensity, persistence, and limiting effects of these symptoms were not entirely credible.

At step four, the ALJ found that Dickson was capable of performing her past relevant work as an inspector and file clerk. AR 76. In making this finding, the ALJ relied on testimony by the VE that someone with Dickson's RFC could perform semiskilled work requiring light exertion. *Id.* Alternatively, at step five, the ALJ found that considering Dickson's age, education, work experience and RFC, there were jobs existing in significant numbers in the national economy that she could perform. AR 77. As a result, the ALJ found that Dickson was not disabled as defined by section 216(i) and 223(d) of the Social Security Act. AR 78.

**D. Analysis**

On appeal, Dickson initially argues that the ALJ's RFC determination is not supported by substantial evidence. In addition, Dickson argues that the ALJ's findings that she can perform her past relevant work as an inspector and file clerk and that there are other jobs that exist in significant numbers in the national economy that she can perform are not supported by substantial evidence. As a result, Dickson asserts that the decision below should be reversed and an order awarding benefits should be entered.

**1. The ALJ's credibility determination.**

Dickson claims that the ALJ's failed to articulate why her testimony about her symptoms was not entirely credible. Dickson's subjective assessment of her symptoms is relevant to determining whether she suffers from a disability but is not conclusive evidence of disability. *Warner*, 375 F.3d at 392 (citing *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001)). In evaluating Dickson's subjective complaints of pain, the ALJ was permitted to consider her

5

credibility and this Court should ordinarily accord great deference to the ALJ's credibility determination. *Id.* In order to evaluate claims of disabling pain, the Sixth Circuit has developed a two-prong test:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Id.* (citing *Felisky v. Bowen*, 35 F.3d 1027, 1038-39 (6th Cir. 1994)).

Contrary to Dickson's arguments, the ALJ articulated his reasons for finding that Dickson's statements about the disabling effects of her pain were not entirely credible. Initially, the ALJ noted that Dickson's medical treatment was inconsistent with her allegations of disabling pain. AR 75. The ALJ emphasized that there was a lack of objective medical evidence supporting severe limitations or debilitating pain. Furthermore, the ALJ noted that recent x-rays of her lumbar spine showed a stable appearance.

The ALJ also considered Dickson's daily activities and found that they were inconsistent with her allegations of disabling pain. During her testimony before the ALJ, Dickson acknowledged that she drives on a regular basis, attends church twice per week and volunteers at other church functions. She also admitted that she cares for and goes fishing with her disabled child. Dickson reported taking daily walks as long as thirty minutes, performing household chores, and participating in 4-H activities with her son. Dickson also claimed that she helps her son with his homework, keeps up with his progress at school, and attends regular meetings with his teachers to discuss his progress. The Court agrees with the ALJ's determination that this level of daily activity is inconsistent with allegations of disabling pain.

Because there is little objective medical evidence supporting Dickson's allegations of disabling pain, the Court will defer to the ALJ's credibility assessment. *Blacha*, 927 F.2d at 231 (deferring to the ALJ's credibility analysis where there was no objective medical support to confirm the disabling effects of claimant's underlying medical condition). As a result, the Court finds that the ALJ's credibility determination is supported by substantial evidence in the record.

**2. Dr. Tallio's treating source opinion and the ALJ's RFC determination.**

Dickson also claims that the ALJ's RFC determination is not supported by substantial evidence because it failed to give proper weight to the opinion of her treating physician, Dr. Tallio. On March 3, 2006, Dr. Tallio wrote that "at this time...[Dickson] is unable to maintain gainful employment." AR 176. Under applicable Social Security Administration ("SSA") regulations, the opinions of treating physicians are entitled to controlling weight if they are (1) "well supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) not inconsistent with the other substantial evidence in [the] case record." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)(quoting 20 C.F.R. § 404.1527(d)(2)). If the opinion of a treating source is not entitled to controlling weight, the ALJ must still consider certain factors to determine what weight the opinion should be given.[1] *Id.* These factors include:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the supportability of the opinion, with respect to relevant evidence such as medical signs and laboratory findings; (4) the consistency of the opinion with the record as a whole; (5) the specialization of the

---

[1] Even when a treating physician's opinion is not entitled to controlling weight, it is nonetheless generally entitled to more weight than other medical opinions because:
> these [treating] sources are likely to be the medical professionals most able to provide a detailed longitudinal picture of [the applicant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

20 C.F.R. § 404.1527(d)(2).

physician rendering the opinion; and (6) any other factor raised by the applicant. *Meece v. Barnhart*, 192 Fed. App'x 456, 461 (6th Cir. 2006)(unpublished)(quoting 20 C.F.R. §§ 404.1527(d)(2)-(d)(6).

After considering Dr. Tallio's opinion, the ALJ rejected it because it was rendered while Dickson was going through physical therapy and did not express an opinion about Dickson's ability to perform work on a long term basis. The ALJ also noted that Dr. Tallio offered no objective medical evidence supporting this finding. Having reviewed the evidence in the record, the Court agrees with the ALJ's determination that assuming that Dr. Tallio's opinion was intended to indicate that Dickson was unable to work on a long term basis, this opinion was inconsistent with substantial evidence in the record.

Dr. Tallio's opinion is not supported by any clinical findings indicating that Dickson would be unable to work on a long term basis. In fact, the opinion appears to be a work excuse, written in the immediate aftermath of Dickson's surgery and emphasizes that Dickson was unable to work "at this time." The Sixth Circuit has recognized that an ALJ is not required to accept a treating physician's conclusory statement that an individual is unable to work, especially in circumstances where the opinion is unsupported by objective criteria and documentation. *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). In this case, while the record contains treatment records from Dr. Tallio, the mere fact that Dickson has sought and received treatment for her various impairments does not indicate that she is unable to work. Furthermore, Dickson has not explained which of Dr. Tallio's treatment records support her claim for disability and the March 3, 2006 work excuse.

A finding that Dickson is unable to perform work on a long term basis is also inconsistent

with other objective medical evidence in the record. Dickson underwent surgery on August 17, 2005 and treating neurosurgeon Dr. Norelle signed a work release on August 23, 2005 indicating that Dickson was expected to be out of work from August 17 to October 17, 2005. AR 180. Follow up exams by Dr. Norelle indicated that Dickson's condition was improving. For example, on September 22, 2005, Dr. Norelle noted that while Dickson still had some complaints of back pain (described as mainly incisional) and some pain in her legs, she had already been doing some walking, was only taking Ibuprofen and Tylenol for her pain and "AP and lateral x-rays show good placement of the pedicle screws, rods, as well as interbody cages." AR 179. Dr. Norelle also noted that Dickson was scheduled to begin physical therapy to strengthen her core and should be weaned off of a back brace over the next two weeks. *Id.* Dickson visited Dr. Norelle again in November 2005 and related that she was still experiencing back pain and claimed the pain was no better than prior to the surgery. AR 178. However, Dickson also stated that she was getting relief with her medications. *Id.* Dr. Norelle recommended that Dickson should continue with physical therapy, stated that her Neurontin dosage might need to be increased, but stressed that her x-rays looked fine. AR 178.

When Dickson returned in February 2006, Dr. Norelle stated that she was making progress in physical therapy, had stopped smoking, and was trying to walk on a daily basis. AR 177. At this time, Dickson had a normal gait and AP and lateral x-rays continued to show stable placement of pedicle screws, rods and interbody cages. AR 177. While physical therapy records indicate that Dickson made several complaints of pain, her condition was apparently improving and her pain improved with medication.

Dickson also claims that the ALJ erred by failing to consider and give appropriate weight

to her chronic plantar fascitis, heel spurs and obesity. However, contrary to Dickson's arguments, the ALJ specifically considered her plantar fascitis which he found to have been resolved with orthotics and physical therapy. AR 72. The ALJ also considered the effect of Dickson's obesity on her ability to work. In fact, the ALJ found that Dickson's obesity was a severe impairment and recognized that he was required to consider her obesity at every step of the sequential evaluation process. While claiming that the ALJ erred, Dickson has not explained how her history of plantar fascitis, heel spurs and obesity limited her ability to work.

The ALJ's RFC determination is also supported by the opinions of state agency physicians who found her capable of performing light exertional work. AR 167-75, 265-74. In reviewing all of the evidence in the record, the Court finds that the ALJ's RFC determination is supported by substantial evidence in the record. In addition, to the extent that Dr. Tallio expressed an opinion that Dickson was unable to maintain gainful employment on a long term basis, this opinion is unsupported by objective medical findings and inconsistent with the medical evidence in the record. Accordingly, the ALJ did not err by rejecting it.

**3. The ALJ's findings that Dickson can perform her past relevant work and other jobs that exist in significant numbers in the national economy.**

Based on her argument that the ALJ's RFC determination was not supported by substantial evidence, Dickson also argues that the ALJ's finding that Dickson was able to perform her past relevant work as an inspector and file clerk is not supported by substantial evidence in the record. In making this argument, Dickson relies on Dr. Tallio's opinion. Dickson fails to recognize that Dr. Tallio only opined that she could not maintain gainful employment at the time the opinion was rendered. Dr. Tallio's opinion did not appear to reach

10

Dickson's long term limitations. Furthermore, for the reasons discussed above, to the extent that Dr. Tallio's opinion was intended to assess Dickson's long term work related limitations, it was properly rejected as inconsistent with the objective medical evidence and Dickson's daily activities.

In determining that Dickson could perform the requirements of her past work, the ALJ relied on VE testimony. The VE testified that someone with Dickson's RFC would not be able to perform her past inspecting job as she performed it because she had at times been required to lift up to fifty pounds. AR 372. However, the VE testified that Dickson would be able to perform the job "[a]s that job is normally performed in the national economy." *Id.* The VE also testified that Dickson "[w]ould also be able to do the past work as a file clerk." *Id.* According to social security regulations, a finding of disability is not warranted where a claimant can perform her past relevant work as she performed it or as it is generally performed in the national economy. 20 C.F.R. § 404.1520(f). As a result, the Court finds that the ALJ's determination that Dickson could perform her past relevant work as a file clerk and as an inspector (as that position is performed in the national economy) is supported by substantial evidence.

Dickson also challenges the ALJ's finding that there are other jobs that exist in significant numbers in the national economy that someone of her age, education, RFC and past relevant work experience can perform. This was an alternative finding because the ALJ had already determined that Dickson could perform her past relevant work as an inspector and file clerk. However, in reviewing the evidence in the record, the Court finds that the ALJ's hypothetical questions to the VE accurately described those of Dickson's functional limitations which were supported by the evidence in the record. *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d

11

777, 780 (6th Cir. 1987). The ALJ did not find Dickson's testimony credible and found that Dr. Tallio's opinion was not supported by the objective medical evidence. Because these findings were not in error, the ALJ was not required to include those limitations in the hypothetical questions to the VE. Accordingly, Dickson's argument that the ALJ's alternative finding was not supported by substantial evidence is without merit

### III. CONCLUSION

For the reasons set forth above, the Court finds that the Commissioner's decision denying Dickson's claim for benefits is supported by substantial evidence in the record. Accordingly, it is **HEREBY ORDERED** that:

(1) Plaintiff's motion for summary judgment [R. 7] is **DENIED;**

(2) The Commissioner's motion for summary judgment [R. 8] is **GRANTED;** and

(3) **JUDGMENT** in favor of the Commissioner will be entered contemporaneously herewith.

Dated this 23rd day of April, 2010.

Signed By:
*Karen K. Caldwell*
United States District Judge